# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WINNING CONNECTIONS, INC., )
317 Pennsylvania Avenue, S.E., Suite 200 )
Washington, D.C. 20003, )
)
        Plaintiff, )
)
   v. ) Civil Action No. 1:05CV02397(GK)
)
WILLIAM BRADFORD "BRAD" CHISM )
221 Westfield Road )
Ridgeland, MS 39157, )
)
CHAD GOSSELINK, )
423 1ˢᵗ Street, S.E. )
Washington, D.C. 20003, )
)
CORPORATE JOHN DOE 1 )
d/b/a Brad Chism Consulting )
1200 G Street N.W., Suite 800 )
Washington, D.C. 20005, and )
)
ILRO LEE )
3924 18ᵗʰ Street, N.E. )
Washington, D.C. 20018 )
             Defendants. )
_____ )

## VERIFIED SECOND AMENDED COMPLAINT

    Plaintiff Winning Connections, Inc. ("Winning Connections"), through below signed counsel, files this Complaint against Individual Defendants Mr. William Bradford "Brad" Chism and Mr. Chad Gosselink and Corporate Defendant John Doe 1, the corporate entity through which Defendants are undertaking business d/b/a GLC Communications or Brad Chism Consulting or Zata-3, and Mr. Ilro Lee for (1) multiple breaches of legal obligations not to compete and recruit, or disclose or use confidential business information belonging to Winning Connections; (2) tortious interference with business and contractual relations; (3) violation of the District of Columbia's

Uniform Trade Secret Act; (4) violations of the Federal Lanham Act; and (5) other illegal and improper actions set out below.

## Parties

1.  Plaintiff Winning Connections is a District of Columbia corporation with its principal place of business at 317 Pennsylvania Avenue, S.E., Suite 200, Washington, D.C. 20003. The President and CEO of Winning Connections is Mr. John Jameson. Winning Connections is a small business with under a dozen personnel, specializing in voter contact initiatives for political and other campaigns. Winning Connections sells its services nationwide to, among others, political campaigns, political groups organized in ballot initiatives, state and local political parties, and other political interest groups.

2.  Defendant Brad Chism is a citizen of the state of Mississippi, residing at 221 Westfield Road, Madison, MS 39110. Mr. Chism has done business, and continues to do business, in this jurisdiction. Prior to December 2005, Defendant Chism worked for Winning Connections as its Vice President for Policy Campaigns.

3.  Defendant Chad Gosselink is a citizen of the District of Columbia, residing at 423 1st Street, S.E., Washington, D.C. 20003. Mr. Gosselink has done business, and continues to do business, in this jurisdiction. Prior to December 2005, Defendant Gosselink worked for Winning Connections as its Vice President for Operations.

4.  Defendant Corporate John Doe is the new business entity through which the individual defendants intend to directly compete with Winning Connections. The identity and location of Corporate John Doe is unknown at this time, but, upon information and belief, is doing business as Brad Chism Consulting or Zata-3, located at 1200 G Street, N.W., Suite 800, Washington, D.C.

20005.   A recent inquiry to the District of Columbia Department of Consumer and Regulatory Affairs, Corporations Office, has indicated that there is no such corporate entity registered to do business in the District of Columbia.

5.   Defendant Ilro Lee is a citizen of the District of Columbia, residing at 3924 18th Street, N.E., Washington, D.C. 20018.   Mr. Lee has done business, and continues to do business, in this jurisdiction.   Prior to December 2005, Defendant Lee worked for Winning Connections as its IT and computer system manager.

## Jurisdiction and Venue

6.   Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 and 1367, in that the claims asserted herein involve federal questions, and any other claims are appropriately brought hereunder pursuant to supplemental jurisdiction.

7.   Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## Allegations Common to All Counts

### Winning Connections and The Telephone Voter Contact Industry

8.   In 1996, Mr. John Jameson created a new voter contact firm known as Winning Connections, to provide telephone voter contact services for political campaigns, political parties, and political interest groups.   Shortly thereafter, and for the past several years, Winning Connections has established itself as the pre-eminent voter contact and grassroots advocacy firm for Democratic campaigns.   It has represented a broad spectrum of such entities, ranging from national presidential campaigns, Senate and Congressional campaigns, national and state and local political parties, so-called "527" groups, other interest groups, trade associations, lobbyists and public affairs consultants

in identifying key messages, developing phone strategies and scripts, implementing telephone campaigns that integrate with its clients' overall campaign, and implement a cost-effective quality telephone, Internet, and voter contact campaigns.

9. Over the years, Mr. Jameson and the Winning Connections staff and other personnel have developed a unique method to contact voters on behalf of political causes. Using confidential and proprietary techniques, and a distinct strategy, Winning Connections has been able to significantly expand its business in the few years since it has begun operating, and today is considered the premier "go-to" firm for Democratic campaigns and parties, and progressive interest groups, interested in reaching out to voters on behalf of their respective causes.

10. As one of its most significant achievements, Winning Connections is proud of the fact that it has won more "excellence in achievement" awards from the American Association of Political Consultants (AACP) -- the "Pollie" awards -- than any other similar company in its class of trade. Winning Connections makes extensive use of this fact, and of its awards, in sales pitches, proposal development, speeches, advertising, and other venues, and these awards are part of the foundation of Winning Connections' extremely successful marketing strategy. In addition, Winning Connections enjoys a sterling reputation as an aggressive, efficient and effective tool for any political or advocacy campaign. In 2005, Winning Connections won 15 Pollies, leading all its competitors in winning such awards.

11. From its inception, Winning Connections has been, and remains, a relatively small business, employing directly, or as consultants, no more than a dozen people (this sometimes increases around elections, when the company hires additional temporary help). Many of its employees are friends or family of its founder, Mr. Jameson.

4

12. Winning Connections, however, has several competitors in its niche market, and must always strive to compete for emerging business.  Because its clients typically retain it to undertake voter contact programs tied to political elections, and often tied to federal elections, the months just after any election day are critical to the business.  More specifically, the months of November and December in odd years, and January, February, and March in even years (during which the overwhelming majority of elections occur), are critical in developing the client base, undertaking other activities necessary to consummate contracts for the upcoming election cycle, and to secure the revenue potential for the upcoming year.

Brad Chism and the Company

13. In 2000, Mr. Jameson, growing his business, hired Mr. Brad Chism to work for Winning Connections.  Mr. Jameson and Defendant Chism were both from Mississippi originally, and knew each other from when they were students at Millsaps College in the late 1970s.  Defendant Chism agreed to work for Winning Connections, and over the next six years he and Mr. Jameson worked together to grow the business.  Indeed, his friendship with Mr. Jameson, Winning Connections' CEO, was so close that often when Defendant Chism would travel to Washington, D.C. he would stay with the Jameson family.

14. Defendant Chism eventually was promoted to a Vice President of the company, and represented himself as, and was, Winning Connections' Vice President for Policy Campaigns.  By agreeing to serve as a Vice President of the corporation, and by representing himself and holding himself out as a Vice President, Defendant Chism knew he would be privy to Winning Connections' confidential and proprietary information nationwide, including Winning Connections' financial, cost, and profitability information, and confidential marketing information and strategies, and understood that he had an obligation not to disclose such information, not to use such information to his

personal advantage, and not to otherwise harm Winning Connections by using its confidential information.

15. In his capacity as a Vice President, Defendant Chism was taken to important client prospecting meetings, was introduced to Mr. Jameson's business colleagues, was introduced to Winning Connections' clients and potential clients, and was included in many aspects of the company's marketing and project implementation efforts. Defendant had access to, and continuously used, the company's proprietary database of potential customers, which not only included names, addresses, and other contact and personal information, but also contained notes about the possible business opportunities that each potential customer presented, or the actual amount of business that the customer had previously undertaken with Winning Connections.

16. In 2005, Defendant Chism was compensated on a monthly draw basis, against which any commissions he earned were calculated. Relevant to this Complaint, for 2005, and by agreement between the company and Defendant Chism, he was to be, and was, paid for his services through the end of November. Thus, through the end of November, 2005, Defendant Chism owed an unqualified duty of loyalty to Winning Connections to pursue all business opportunities for the benefit of the company.

17. In the past several months, Mr. Jameson took Defendant Chism to several significant client prospecting meetings, including, but not limited to, a meeting with a significant statewide campaign in State Party "A".[1]  In that meeting, Mr. Jameson and Defendant Chism discussed ways in which Statewide Campaign A could retain Winning Connections to undertake voter contact outreach

---

[1] Winning Connections will disclose in greater detail the specifics of these client meetings and the identities of all parties described herein, upon entry of an appropriate Protective Order ensuring their confidentiality. Plaintiff has, however, identified all parties and actions with sufficient specificity to allow Defendant Chism to identify each described event.

and other grassroots programs, and otherwise engage in a targeted telephone contact program. Following the meeting, Mr. Jameson and Defendant Chism had extensive direct discussions about ways in which Winning Connections could retain Statewide Campaign A as a client. Mr. Jameson and Defendant Chism had similar interactions with many other campaigns as well.

18. As late as October 2005, Defendant Chism was asking Mr. Jameson to make introductory calls to prospective clients, and to "put in a good word" for him (Chism) with prospective and existing clients with whom Mr. Jameson had a relationship.

<u>Defendant Chad Gosselink and the Company</u>

19. In or about 1998, Mr. Jameson also hired Mr. Chad Gosselink to work for Winning Connections. Mr. Jameson and Defendant Gosselink knew each other through family connections and prior work on political campaigns. Defendant Gosselink agreed to work for Winning Connections, and over the next several years he too was promoted to Vice President of Operations. As a senior executive officer of the company, Defendant Gosselink knew he would be, and was, privy to Winning Connections' confidential and proprietary information nationwide, and he also understood that he had an obligation not to disclose such information, not to use such information to his personal advantage, and not to otherwise harm Winning Connections by using its confidential information.

20. Like Defendant Chism, Defendant Gosselink was also taken to important client prospecting meetings, was introduced to Mr. Jameson's business colleagues, was introduced to Winning Connections' clients and potential clients, and was included in many aspects of the company's operational and project implementation efforts. Defendant had access to, and continuously used, the company's proprietary database of potential customers, which not only

7

included names, addresses, and other contact information, but also contained notes about the possible business opportunities that each potential customer presented, or the actual amount of business that the customer had previously undertaken with Winning Connections.

21. In sum, as Vice Presidents of Winning Connections, both individual Defendants had responsibility for, and access to, many aspects of Winning Connections' sales and marketing information nationwide. They also worked closely with other Winning Connections' personnel in locating, developing, and implementing business opportunities on behalf of Winning Connections. In several circumstances, Defendant Chism was the primary contact with Winning Connections' customers. Both were responsible for supervising other Winning Connections' personnel marketing and operational efforts. In that capacity, they both understood that they would be exposed to confidential business information belonging to Winning Connections, and that they needed to safeguard it and keep it confidential to the company at all times.

22. The marketing and sale of voter contact programs, and telephone contact programs, is a highly competitive business and dependent on a strong and productive sales force. Literally dozens of political consultants, marketing firms, advertising agencies, and others compete for client contracts on a continuous basis. Winning Connections, as a pioneer in the industry, has successfully competed in this highly competitive emerging market using unique and proprietary business programs and strategic pricing plans that it has developed over many years with input from its management and sales force.

<u>September 2005 – Defendants Conspire To Steal Winning Connections' Confidential Business Information and Misappropriate It For Their Own Business</u>

23.    Winning Connections has been unable to determine when Defendants began their conspiracy, but has found email exchanges as early as September 20, 2005, in which Defendants discuss among themselves how to steal Winning Connections' confidential business information and

misappropriate it for their new business. Attached as Exhibit 1 is an email from Defendant Chism to

Defendant Ilro Lee, then serving as Winning Connections' IT and computer system manager, asking

that he forward the email to Defendant Gosselink, in which Defendant Chism articulated the precise

manner in which he would "download" information from Winning Connections' proprietary and

unique "WCI system" (WCI stands for Winning Connections Inc.) – the confidential and proprietary

database developed by Winning Connections for its own use. Defendant Chism wrote:

> talked to two corporate lawyers who say our exposure is twofold: 1. if we take
> propriety, trademarked or patented systems. There is nothing in WCI like that so we
> are alright. 2. If we try to break a contract between WC and a client. Again, there
> are no signed contracts with clients til the last week or so. It gets a little fuzzy after
> that. For example, in AR, WC has verbal commitments from the Beebe campaign.
> The lawyers doubt that a lawsuit against us for going after that one would stand up
> but advises us to try to work out most of these issues on the front end. they say 90%
> of litigation is avoided if we sit down and say "we want to leave on good terms. Let's
> talk bout some of the things in the pipeline. If he's smart, he'll agree to do this as he
> wont want an ugly split anyway. The other thing we need to avoid is emailing to a
> WC newsletter list -- they might argue that WC put this together over the years and
> we're pirating it. <u>What we need to do is download the contacts we want</u>--only those
> that are public informrmation (sic) from other sources--and then use a standard
> outlook format for them now. The big thing to avoid is leaving on one day and then
> at 5 p.m. the same day batch emailing to the entire WCI database. That's borderline
> legality but it's a slap in the face and is likely to generator ill will when we leave
>
> -- <u>i think we need to try to hang on thru November elections.</u> We either need to
> leave this week--and only after we land a $X00,000 project and convince them to go
> with us, or wait as long as we can in 05, giving WC good service til the day we walk
> out.
>
> Will write more later.

Exhibit 1 (emphasis added). Defendants, ignoring the incomplete legal advice that they received,

later followed through on their goal of "download[ing] the contacts" they wanted, taking not only

those that were public information but also other contacts and information that were not known

generally, but only known to them through their work at Winning Connections. Further, the email

clearly states their thoughts of stealing Winning Connections' clients and then persuading those

clients "to go with us." Although Defendants did not leave in September, the events that followed soon proved their malicious intent.

<u>October and November 2005 -- Defendants Chism and Gosselink Engage In Significant Document and Technology Theft</u>

24. As noted above, Defendants began concocting their scheme of stealing Winning Connections' confidential business information no later than September 2005. Throughout October and November 2005, Defendant Chism was in possession of a laptop computer and blackberry device belonging to Winning Connections. Defendant Gosselink was working out of Winning Connections' offices in Washington, D.C. Both were traveling to client meetings and prospective client meetings at Winnings Connection expense. Although as of the date of the filing of this Complaint Winning Connections has just begun its investigation into Defendant's misuse of its corporate resources, it is already known that Defendants engaged in a systematic and routine theft of dozens of Winning Connections' documents and the destruction and deletion of over 500 computer files in the month prior to and around their departure.

25. During this time, Defendant Chism stole some of Winning Connections' most sensitive and confidential documents. Consistent with their expressed intention in the September 20, 2005 email, these included, upon information and belief, customer data and financial information, report format documents, financial information, and numerous other documents that constitute the lifeblood of the company. Defendant Chism's intention was purposeful and plain – to use Winning Connections' confidential business information to launch his directly competing business.

26. Defendants were also conspiring to steal the very core of Winning Connections' data management system – the proprietary and highly confidential "WCI contacts" system, the central database and project management system created by Winning Connections. Winning Connections has invested years of work, and tens of thousands of dollars, into building the proprietary WCI

contacts system for the operation of its business. The WCI contacts system is unique, highly confidential, and its operational details are not known to any person outside the company.

27. For example, on November 2, 2005, Defendant Ilro Lee (then still the Winning Connections computer manager) emailed Defendant Chism asking "[h]ow big is the database of the contact you will have in our contats [sic] folder... ", referring to the WCI contacts system and the client contacts list that Defendant Chism was in the process of taking from Winning Connections. As part of that effort, Defendant Chism had emailed from his company computer to another of his private email accounts an Excel spreadsheet called "06_targets.xls," a list of 2006 client prospects that had originated on the Winning Connections database. Exhibit 2. Indeed, many of the names on the list were persons that Defendant Chism had met only through introduction by Mr. Jameson, and contained information about them that had come from the Winning Connections database.

28. Over the next three weeks, Defendants Chism and Gosselink continued to work together to steal Winning Connections' core data, information, and technology infrastructure. For example, on November 20, 2005, Defendant Lee sent another email to both individual Defendants, Exhibit 3, in which he asked "Did you guys had the chance to read what I sent you about how we structure the company ... . and ... . [the] WCI contacts in timely manner?"

29. The theft of the WCI contacts system was not the only example of Defendants' misappropriation of Winning Connections' confidential information and proprietary trade secrets. In an October 26, 2005, email from Defendant Chism to Defendants "Chad [Gosselink, Winning Connections Vice President for Operations] and Ilro [Lee, Winning Connections database manager]," Defendant Chism wrote:

> there are several Winning Connections documents that we may want to think about modifying to fit out needs. I think we need to avoid an outright copy of the format

of the existing documents to minimize headaches from John [Jameson] as well as to
ensure that clients don't think we are Winning Connections Lite.

Exhibit 4 (email from "Brad" to "Chad and Ilro," October 26, 2005, see also email Dated

November 2, 2005 discussing number of names from contacts database to be taken).  Defendant

Chism's email continued with a detailed analysis of various existing Winning Connections

documents he planned to take, including the changes he wanted to make on the Winning

Connections documents that he was misappropriating and converting for his own use.

30. Defendants also conspired to take other corporate opportunities from Winning
Connections.  Throughout October, the company had worked with a graphic design firm to develop a
new marketing campaign, with specific dates and milestones.  Literally within 15 minutes of the
proposal being circulated to the Winning Connections' executive team, however, Defendant Ilro Lee
was emailing it to Defendant Chism proposing "Maybe we should look into this."  Exhibit 5.  It is
plain that Defendants were engaged in a systematic effort to misappropriate every conceivable
business tool that Winning Connections had, or was even in the process of developing, for their own
business.

31. The frank and candid email exchanges between Defendants demonstrate that their
actions were premeditated, and were coordinated with other Winning Connections employees, in
particular Defendant Lee, whom Defendants were intending to take from the company for the new
competitor business.

November 2005 -- Defendants Falsely and Knowingly Misrepresent to Winning Connections Their
Decisions to Leave and Conspire With Others To Misrepresent Other Events.

32. On or about November 5, 2005, months after he had begun his plan to compete with
Winning Connections, Defendant Chism knowingly and falsely notified Mr. Jameson that he was
intending to leave the company to pursue becoming a "GC" – a General Consultant to political

campaigns. Mr. Jameson responded to Defendant Chism's statements by suggesting that they might work out an arrangement through which Mr. Chism could pursue his general consulting opportunities, but continue to work part-time or on a project basis for Winning Connections. On November 11, 2005, Mr. Chism responded to Mr. Jameson's offer to continue working part time on the purported ground that becoming a general consultant might run the risk of creating a "conflicts of interest" in working for Winning Connections but also creating opportunities for himself. Defendant Chism continued to represent to Mr. Jameson that he was going to pursue general consulting work, and did not indicate that he had already begun planning, and was intending, to enter into a directly competing business. In fact, Mr. Jameson actually referred some general consulting business to Defendant Chism within a few days of their November 11, 2005. While Mr. Jameson and Defendant Chism continued to discuss the issue throughout the month of November, unbeknownst to Winning Connections, as early as September 2005 Defendant Chism had already undertaken efforts to unfairly compete with Winning Connections.

33. More specifically, as early as September 2005, the individual defendants were talking among themselves and emailing about which Winning Connections documents they were planning on stealing to set up their new business.

34. Defendant Gosselink also lied to Winning Connections about his departure. He first notified Mr. Jameson by email on Tuesday, November 29, 2005 that he was leaving because he had been "offered" a position with Defendant Chism's new entity. The email stated:

> it's with great excitement and sorrow that I'm letting you know that I'm calling it a day here at Winning Connections. I forgot that you were traveling today so unfortunately I have to do this via email but certainly want to do this face to face with you when you get back tomorrow. There is nothing but positive things I can say about my experience here and more than that, the experience I've had working with you. In fact, I think through your seven years of leadership, you have lead me as far as I can go in the Winning Connections nest and I need to find out if I can fly on my own. <u>Brad has extended an offer</u> to once again get in on the ground floor and

I'd have a major stake in the company from the get go. I admire you for taking risk and building a successful company through dedication and hardwork. I want to put a bigger load on my back and see if I sink or swim. I'd finish out the week and then my full time dedication would be getting a new business started. However, <u>I still have loyalty to not only you, but the company that I've grown to be part of</u> and I would be willing to offer help in transitioning myself out and someone else into the position.

Exhibit 6 (emphases added). Defendant Gosselink's email was particularly duplicitous in that months before he professed his purported "loyalty to … the company that I've grown to be a part of," he and Defendant Chism had been conspiring to steal company documents and personnel and begin directly competing with Winning Connections.

35. Defendants Chism and Gosselink also conspired with Defendant Lee to fabricate stories that they would tell to Mr. Jameson (the CEO) to disguise the fact that they were going to collaborate and begin a competing venture. For example, on November 20, 2005, Defendant Ilro Lee, Winning Connections' chief technology officer, emailed Defendant Chism as follows:

Did you guys had the chance to read what I sent you about how we structure the company to give me incentives to work new products and build the new ops and WCI contacts in timely manner?
Well, <u>as soon as I get the nod from you two</u> I want to quit the firm. I thought about how we go about doing this, and I couldn't come up with a better way. <u>I want to go to John and say I have lost my inner desire to work and I need to have a significant change in life. Also want to concentrate on school.</u>
Please let me know on your thoughts.

Exhibit 7 (underline added). Similarly, on November 23, 2005, Mr. Lee sent Defendant Chism an email in which he stated:

Have you thought about when the best time would be for me to leave? Chad and I agreed that let chad announce his departure first and I fade out later, by saying I want to concentrate on school and Chad is going to pay me a shit load of money to build WCI contacts and Ops. Allison also agreed. Let me know.

Exhibit 8. Defendant Chism replied: "If you and chad have it worked out on departure dates, I concur. By building WCI and Ops, are you saying for John or for new company?", again referring to the WCI contacts system. Within the next few days, Mr. Lee presented to Mr. Jameson, his CEO,

14

the precise false excuse he and Defendant Chism had concocted.  Of course, Mr. Lee was simply waiting for "the nod" from Defendants Chism and Gosselink to make his move.

<u>Defendant Chism Tries To Destroy the Evidence, and Engages In Massive Document Deletion On His Winning Connections Laptop</u>

36. Defendants' candid email exchanges make plain that their actions were premeditated, and were coordinated with other Winning Connections employees whom Defendants was intending to take from the company for the new competitor business.  Given Defendants' frank email communications, it is not surprising that they would attempt to try cover up their scheme.

37. In fact, Defendant Chism willfully and maliciously destroyed hundreds of Winning Connections' documents from his corporate laptop in an effort to hide his activity from the company. For example, between November 2, 2005 and December 6, 2005, Mr. Chism undertook a massive purge of documents, deleting and erasing 540 individual files off his Winning Connections computer hard-drive.  To date Winning Connections has been unable to retrieve many of these corporate materials.  Winning Connections is also unable to determine how many corporate documents Defendant Chism has taken from the company and how he is using them to his advantage in violation of his obligations and duties to Winning Connections, but intends to pursue such investigation through discovery at the earliest available opportunity.

<u>The Individual Defendants Pursue Direct Competition with Winning Connections, Blatantly Misrepresenting The New Business Venture to Third Parties</u>

38. Following the November elections, the first major marketing opportunity for Winning Connections was to be the December 1-3, 2005 Democratic National Committee meeting in Phoenix, Arizona.  As contemplated in their September 20, 2005 email, however, and while still working for Winning Connections, Defendant Chism contacted a senior official at the Association of State Democratic Chairs, to arrange a cocktail reception at the DNC event.  Upon information and belief,

Mr. Chism did not disclose to that official that he was planning the reception for his new entity, rather than for his then-employer, Plaintiff Winning Connections. Based upon his representations, the official believed that the reception was to be hosted by Winning Connections. This is one of many examples of Defendant's intentional misrepresentation of his new business venture to existing and potential Winning Connections' customers.

39. Consistent with his misrepresentations to that official, Defendant Chism invited numerous corporate clients and corporate prospects of Winning Connections to his cocktail reception in Phoenix, all the while misrepresenting to them the nature of the reception or the fact that the party was to be for his new entity, rather than for Winning Connections. Thus, many reception attendees attended under the false pretense that Winning Connections was the host of the reception. Indeed, one of the attendees (whom Mr. Jameson had introduced to Defendant Chism) communicated to Mr. Jameson of Winning Connections to the effect that he "... got the note from Brad, and look forward to seeing you at your party in Phoenix." Of course, Defendant Chism knew that he could attract far more attendees to his party if he falsely created the impression that Winning Connections, his employer, was the host.

40. Defendants have also circulated various emails and other announcements containing false information about his new business venture. For example, on December 7, 2005, Defendant Chism circulated an email to certain Winning Connections clients and client prospects stating that he and another Winning Connections employee were "leaving the firm to launch a new telephone voter contact firm for progressive candidates and causes." The email continued, falsely stating that Defendant Gosselink, "ran the call centers, oversaw the databases and directed the other aspects of the 'back office' that made Winning Connections a top tier firm. Together, we will offer the experience of more than 1300 telephone voter contact programs in 48 states as we serve clients in this

new firm." Exhibit 9. Unfortunately, the email misrepresented the facts, as numerous other Winning Connections' personnel had also been involved in running the call centers, overseeing the databases, and running the "other aspects of the back office...."[2] Further, Mr. Jameson, not Defendant Chism, along with the Winning Connections' staff, were all involved in engineering and running many of the programs. Defendants' statements were misleading, false, and intended to deceive the audience to which they were sent.

41. Attached to the same email was a one-page description of corporate John Doe 1, the unnamed company that was to engage in the new business. Exhibit 9. The new entity is nowhere identified on the one page description. Similar to the email, the document contains false and misleading statements intended to deceive the audience to which it was sent. For example, the document states:

> **Do you have the experience to get the job done?**
>
> Since 1998 Chad managed call center logistics for more than 1300 calling programs in 48 states for Winning Connections. We've added operations staff that were part of our team last year during the final month of the election cycle-- the system we built tracked more than one hundred fifty calling programs making six million calls across the country. And this year alone, Brad has aided clients in 27 states, ranging in size from legislative special elections to statewide ballot measures.
>
> **What about work quality?**
>
> Of the 13 AAPC award for excellence Winning Connections won in 2005, Brad developed and managed 10 of these programs. The previous year, Brad's calling programs won 8 awards for excellence at the AAPC.

Exhibit 9. Unfortunately, the "system" of which the new Joe Doe 1 entity was claiming as its own which "tracked more than one hundred fifty calling programs making six million calls" belonged to Winning Connections – not to it. In fact, the system is Winning Connections' operations system the

---

[2] Ironically, in even his over inflated estimate, Defendant Chism estimated that he was responsible for no more than 55% of firm revenues in 2005. Of course, the reality is a far lower percentage.

very system that Defendants were in the process of stealing from Winning Connections since September 2005. Nor did that system belong to Defendants – it was actually the system that Winning Connections built through the work of many other employees and consultants. Defendants have simply and intentionally misrepresented the work of their past employer as the work of their new entity, in flagrant violation of the truth and of their obligations to Winning Connections.

42. Similarly, Defendant Chism ("Brad") did not himself develop or manage each of the 10 (of the 13) programs which received AAPC "Pollie" awards for which he took sole credit in his marketing materials. Rather, these programs were developed and managed by several on the Winning Connections team, including its CEO and President, John Jameson, and other Winning Connections staff. While Defendant Chism had some involvement in several of the programs, there were other programs in which he had no substantive involvement whatsoever. By claiming Defendant Chism to have sole responsibility for these award-winning programs, Defendants have intentionally misrepresented the work of their past employer as the work of their new entity, in flagrant violation of the truth and of their obligations to Winning Connections.

Defendant Chism Poaches Winning Connections' Key Employees

43. Beyond misappropriating Winning Connections' trade secrets, confidential and proprietary business information, improperly contacting Winning Connections' existing and prospective clients, misrepresenting his marketing activities, falsely claiming credit and responsibility for Winning Connections' work, and slandering his former company, Defendant Chism and John Doe 1 also improperly engaged in a systemic effort to undermine Winning Connections by poaching existing key staff and wooing them to leave Winning Connections just as it was gearing up for the 2006 election cycle.

44. More specifically, Defendant Chism, on behalf of himself and Joe Doe 1, contacted Defendant Gosselink, a senior member of the Winning Connections staff, and persuaded him to leave the company and join John Doe 1 as a new employee. Similarly, upon information and belief, Defendant Chism contacted the Chief Information Officer, Defendant Ilro Lee, and persuaded him to leave the company as well. By poaching Winning Connections' employees, particularly given the very lean staff working for the company, and the key role of staff members, and at a time when Defendant Chism knew the company was about to embark on a major marketing campaign and operational efforts for the 2006 election cycle, Defendants Chism, Gosselink and John Doe 1 interfered with Winning Connections' ongoing business and prospective business advantage.

Defendant Lee Misrepresents His Intentions to Winning Connections and Joins Defendants in their New Business

45. Beginning in September 2005, and throughout November and December 2005, Defendant Lee misrepresented to Winning Connections that he intended to continue working for the company. In September, Mr. Lee requested that Mr. Jameson submit a letter of recommendation on his behalf to the University of Maryland MBA program, claiming that his MBA would enable him to perform better work in the coming years for Winning Connections. Obviously, that representation was false. Similarly, in October and November 2005 Mr. Lee represented to the company that he intended on pursuing other opportunities but would remain as a consultant to Winning Connections. Relying on this representation, Winning Connections continued to permit Defendant Lee access to confidential and proprietary information. However, in January 2006, Defendant Lee informed Winning Connections of his true intentions to join the other Defendants in forming their new business.

<u>Defendant Lee Fails to Repay $30,000 Belonging to Winning Connections</u>

46. On May 20, 2004, Winning Connections and Defendant Lee entered into an agreement through which the company loaned Defendant Lee $30,000, payable on demand by Winning Connections. Winning Connections has sent Mr. Lee a written demand for immediate repayment. Defendant Lee has failed to repay the loan, and is improperly and illegally in possession of Winning Connections funds.

<u>Summary</u>

47. Taken together, Defendants' conduct represents a coordinated and premeditated plan to steal Winning Connections' confidential business information, trade secrets, and employees, and harm the business by: (1) taking and using for the new business Winning Connections' trade secrets and confidential business information; (2) systematically destroying company property, including over 500 files of documents on Defendant Chism's company laptop to cover up their actions; (3) misrepresenting the marketing efforts on behalf of the new company as those of Winning Connections in an effort to lure Winning Connections' clients and potential clients to his marketing reception; (4) misrepresenting Winning Connections' accomplishments as their own; (5) directly marketing to existing Winning Connections' clients and to entities to whom the individual Defendants were introduced when working for Winning Connections; (6) improperly poaching Winning Connections' key employees in an effort to harm its business; and (7) converting Winning Connections' property.

48. Any one of these actions alone would be sufficient to harm Winning Connections, and support injunctive relief and damages before this Court; taken together, Defendants' activity over the past several months transcends even the most extreme competition that former officers of a

corporation are allowed to engage in when leaving their former employer. Defendants have used, and will inevitably continue to use, Winning Connections' confidential and proprietary information. Further, Defendants have already distributed to third parties false and misleading information about their new business to the harm and detriment of Winning Connections. Thus, immediate and ongoing relief from this Court, as well as an eventual award of damages, are necessary to end Defendants' unlawful conduct and to restore Winning Connections to the business advantage to which it is entitled but for Defendants' improper and illegal conduct.

<u>Counts</u>

## I.  Violation of Lanham Act (All Defendants)

49. Plaintiff incorporates paragraphs 1-48 of this Complaint, as if set forth in full herein.

50. Defendants, and each of them, have made false and misleading statements in commercial advertising and promotion, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(b). These statements included promotional emails, promotional flyers, and other statements in which Defendants held out their marketing events as those of Winning Connections. Exhibit 9. The statements, and each of them, was false and misleading, actually and likely deceptive, material in their effect on client buying decisions, connected with interstate commerce, and actually or likely injurious to Winning Connections.

51. More specifically, Defendants commercial advertising and promotional materials falsely and in a misleading manner took credit for work they did not do, for awards they did not win, and for programs created and achieved by Winning Connections that they did not run. Exhibit 9. Defendants also engaged in promotional activity in the guise of acting on behalf of Winning Connections, when in fact the activity was on their own behalf to the detriment of Winning

Connections. These actions and statements were literally false, or were likely to mislead or confuse consumers of Winning Connections' products. The statements will, upon information and belief, have a material effect on client contracting decisions.

52. Each of the statements was made in, and connected with, interstate commerce, and has been, or will likely be, injurious to Winning Connections. Further, Defendants acted willfully and in bad faith in disseminating statements that they knew: (1) were not true; (2) would be likely to deceive customers; and (3) would harm Winning Connections.

53. Winning Connections is entitled to damages as permitted by 15 U.S.C. § 1117(a), as well as injunctive relief as allowed by 15 U.S.C. § 1116(a).

## II. Misappropriation of Confidential Business Information (All Defendants)

54. Plaintiff incorporates paragraphs 1-54 of this Complaint, as if set forth in full herein.

55. Winning Connections possesses extensive confidential business information regarding its clients, its contracts, its business methods, its actual and prospective pricing, and its prospective clients. These include, but are not limited to, the proprietary "WCI contacts" system. Defendants, as a result of their work with Winning Connections and their positions as Vice Presidents, acquired that confidential business information. The individual Defendants have taken that information from Winning Connections, and either used it or given that information to John Doe 1. All Defendants have used that secret information, or intend to use that information, without the consent of, and over the objection of, Winning Connections. All Defendants have, and will continue to, use that information in the development of their new and competing business to that of Winning Connections.

56. The confidential business information taken by the individual Defendants includes numerous Winning Connection documents and pieces of data, including documents which Defendant Chism downloaded from his company laptop computer to his personal email accounts, and circulated to others for the purpose of starting a competing business to that of Winning Connections.

57. Defendants also have attempted to hide their document theft from Winning Connections by engaging in a massive document deletion from company laptop and possibly other computers before he formally resigned.

58.    During the course of his employment for Defendant John Doe 1, the individual Defendants, as agents of John Doe 1, disclosed, or inevitably will disclose, to John Doe 1 and others Winning Connections' confidential and proprietary business information.

59. Defendants will have to use, and cannot help but rely upon, Winning Connections' confidential business information that has been disclosed, or that will be disclosed by Defendant Chism as Defendants plot their course into the voter contact and telephone contact business.

60. To the extent the information has not yet been disclosed, these secrets, if disclosed, will enable Defendants to achieve a substantial advantage by knowing exactly how Winning Connections creates, develops, implements, markets, prices, and sells its services and the customers and prospective customers to whom it is selling or plans on selling its services.

61. Defendants owed a common law duty to Plaintiff not to avail themselves of this information, and not to use it for their personal gain.  Defendants have breached that duty and have caused Plaintiff irreparable harm for which only injunctive relief may be appropriate, and damages.

### III.  Violations of D.C. Trade Secret Act (All Defendants)

62. Plaintiff incorporates paragraphs 1-61 of this Complaint, as if set forth in full herein.

63. The confidential and proprietary information Winning Connections provided to Defendants Chism, Lee and Gosselink, including information related to customer lists, proprietary marketing information, prospective business opportunities; existing contracts and prices; and revenue and growth information, derives independent economic value from not being known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

64. Winning Connections maintained the secrecy of its information by educating its staff, and by having its employees maintain the confidentiality of the information.

65. To the extent the information has not yet been disclosed, these secrets, if disclosed, will enable Defendants to achieve a substantial advantage by knowing exactly how Winning Connections creates, develops, implements, markets, prices, and sells its services and the customers and prospective customers to whom it is selling or plans on selling its services.

66.     Defendants, individually and through the conduct of Defendant Chism individually and as an agent of Defendant John Doe 1; did and/or will inevitably wrongfully use Winning Connections' confidential and proprietary information to obtain a competitive advantage over Winning Connections, thereby violating D.C. Code § 48-501, *et seq.* (Uniform Trade Secret Act of 1988, as adopted by the District of Columbia).

67. Defendants owed a statutory duty to Plaintiff not to avail themselves of this information, and not to use it for their personal gain, even absent confidentiality and non-compete agreements and

express definitions of confidential relationships.    The confidential information at issue here was disclosed to promote a special relationship between Winning Connections and Defendants Chism and Gosselink.  Defendants have breached their duty to keep that information confidential and not to use it for any purpose other than to benefit Winning Connections, and thus have caused Plaintiff irreparable harm for which only injunctive relief may be appropriate, and damages.

68. Defendants' conduct has, and will continue to, cause irreparable harm and damages to Winning Connections, in an amount to be proven at trial, and in a form for which injunctive relief is the only available remedy.

### IV.  Breach of Fiduciary Duty (Defendants Chism and Gosselink)

69. Plaintiff incorporates paragraphs 1-68 of this Complaint, as if set forth in full herein.

70. During the course of his work with Winning Connections, Defendants Chism, Gosselink, and Lee were entrusted with Winning Connections' highly confidential and proprietary information.    Defendants required this information to perform their jobs successfully, they understood that such information was highly confidential and proprietary, and to the best of Plaintiff's understanding they preserved the confidentiality of such information until approximately October or November 2005.    Further, Winning Connections trusted them not to disclose the confidential information, or otherwise use it to gain an unfair advantage over Winning Connections.

71. Winning Connections entrusted Defendants Chism, Gosselink, and Lee with this information with an expectation that both employees would act for the benefit of Winning Connections, not their own self-interest.    Moreover, Winning Connections depended upon the individual Defendants to contribute to its continued success in the political voter contact and phone contact arena.

25

72. Having been entrusted with Winning Connections' highly confidential information, and given their status as Vice Presidents and Chief Information Officer of the company, Defendants had a fiduciary duty not to use that information to Winning Connections' detriment. This duty included an obligation of undivided and unselfish loyalty to Winning Connections, and an obligation to act solely for the benefit of Winning Connections in all matters within the scope of their engagement and to avoid conflicts of interest between their duty to Winning Connections and their own self-interest.

73. By working on their own behalf or on behalf of Defendant John Doe 1, and by disclosing Winning Connections' confidential and proprietary information to third parties (including John Doe 1 and others), Defendants Chism, Gosselink, and Lee breached their fiduciary duty owed to Winning Connections.

74. At least Defendant Chism (and possibly Defendants Gosselink and Lee as well) has also breached his fiduciary duties by downloading company documents for his own and others' use, by deleting hundreds of documents from his company computer before leaving Winning Connections, by falsely representing to Winning Connections that he was leaving to pursue general consulting work when in fact he had been planning in careful detail for weeks how he would begin a directly competing business; and in aiding and counseling others to misrepresent to Winning Connections the reasons they were planning on leaving as well.

75. Defendants' breach has caused, and will continue to cause, Plaintiff to suffer damages.

**V. Intentional Interference with Existing Contractual Relations (All Defendants)**

76. Plaintiff incorporates paragraphs 1-76 of this Complaint, as if set forth in full herein.

77. Winning Connections, at all times material to this Complaint, had existing contracts with multiple clients for various services. Defendants knew of, and were aware at all times of, those existing contracts.

78. Defendants have intentionally attempted to, and will continue to attempt to, induce breaches of those contracts or interference with ongoing contractual relations between Winning Connections and its clients. This action is illegal, and in violation of law. Among other reasons, and given the position of each individual Defendant as a Vice President of Winning Connections, or in Defendant Lee's case as Chief Information Officer, Defendants were prohibited from competing with Winning Connections. Yet, during the very same time as they were working for Winning Connections, Defendants Chism, Lee and Gosselink were working for Defendant John Doe 1, contacting Winning Connections' existing and prospective clients holding himself themselves out as a Winning Connections employees, to woo them to work with John Joe 1. John Doe 1 was aware at all times of the individual Defendants' actions, and that they were improperly and tortiously misrepresenting themselves and their efforts as on behalf of Winning Connections when they were in fact on behalf of Defendant John Doe 1.

79. In continuing this conduct, the Defendants tortiously interfered with existing contract relations belonging to Winning Connections.

80. Defendant John Doe 1's conduct has caused Winning Connections damages and harm in an amount to be proven at trial.

### VI. Intentional Interference with Prospective Contractual Relations (all Defendants)

81. Plaintiff incorporates paragraphs 1-81 of this Complaint, as if set forth in full herein.

82. Winning Connections, at all times material to this Complaint, had existing valid business relationships and the expectancy of entering into contracts with multiple prospective clients for various services. Defendants knew of, and were aware at all times of, those existing contractual opportunities and expectant business relationships.

83. Defendants have intentionally attempted to, and will continue to attempt to, induce prevent those prospective contracts or interfere with ongoing contractual relations, between Winning Connections and its clients. This action is illegal, and in violation of law. Indeed, Defendants have taken specific actions, *in the name of Winning Connections,* to induce breaches of those contracts or to prevent them from being consumed. As but one example, on or about December 7, 2005, and at other times to be determined at trial, Defendants illegally and improperly held themselves out as acting on behalf of Winning Connections, when they were in fact acting on their own behalf to the detriment of Winning Connections. Defendants were also improperly soliciting business from existing and prospective Willing Connections clients using confidential business information and trade secrets belonging to Winning Connections. During much of this time, Defendants Chism and Gosselink were still being paid by Winning Connections and was expected to act in the company's interests, rather than their own. Accordingly, Winning Connections reasonably expected Defendant Chism to work as its sales representative. Additionally, Defendants owed to Winning Connections a duty of loyalty and a duty to use his best efforts to sell Winning Connections' services.

84. Defendants Chism and Gosselink, individually, and as an agents of Defendant John Doe 1, knew, no later than November 1, 2005, that they owed these duties to Winning Connections and that it was improper for them to be using Winning Connections' proprietary information for Defendants' business purposes. Defendant Lee may have been a participant in these actions as well.

85. Despite such knowledge, Defendants caused a breach of their duty of loyalty and duty of good faith and fair dealing with Winning Connections.

86. Defendants' solicitation of clients, and their poaching of Winning Connections' employees, were improper, unlawful and prohibited by law.

87. Defendants' actions resulted in damages and other harm to Winning Connections, in an amount to be proven at trial.

## VII. Unfair Competition (Both Defendants)

88. Plaintiff incorporates paragraphs 1-88 of this Complaint, as if set forth in full herein.

89. Defendants, at all times material to this Complaint, have engaged in unfair competition by soliciting Winning Connections' employees to join with them, by misrepresenting themselves as Winning Connections to lure third parties to attend their marketing events, by intentionally misrepresenting the work for which Defendant Chism and others were responsible when they worked for Winning Connections, and by interfering with Winning Connections' access to ongoing business opportunities.

90. As a result of these actions, Winning Connections has been damaged in an amount to be determined at trial.

## VIII. Conversion (Defendant Chism)

91. Plaintiff incorporates paragraphs 1-91 of this Complaint, as if set forth in full herein.

92. After deciding to end his business relationship with Winning Connections, and in derogation of his responsibilities as a Vice President of the company, Defendant Chism retained

corporate materials, including a laptop computer and associated files. Defendant Chism used these materials for purposes other than in the interests of Winning Connections, thereby unlawfully exercising ownership, dominion or control over the personal property of another in denial or repudiation of Winning Connections' rights thereto.

93. Winning Connections formally demanded the immediate return of its property by multiple written communications, the last dated December 12, 2005. Yet, the documents have not been returned.[3]

94. Before Defendant Chism returned his computer to Winning Connections, he deleted hundreds of computer files. Winning Connections has been unable to reconstruct the information that was deleted, and Defendant Chism has returned its property. Upon information and belief, Defendant Chism has retained Winning Connections' information and documents, and has not returned the material to its rightful owner.

95. As a result of these actions, Winning Connections has been damaged in an amount to be determined at trial.

## XI. Conversion (Defendant Lee)

96. Plaintiff incorporate paragraph 1-95 of this Complaint, as if set forth in full herein.

97. After misrepresenting his intentions to remain as a consultant and in fact terminating his business relationship with Winning Connections, Defendant Lee wrongfully maintained possession of $30,000 loaned to him by Winning Connections on May 20, 2004.

---

[3] Defendant Chism sent an email response on December 13 stating: "some time ago i returned to winning connections a blackberry and laptop computer. i have confirmation that it was received." He has not, however, returned any misappropriated documents.

98. Winning Connections formally demanded return of the $30,000 loan by written communication on January 5, 2006. The $30,000 remains unpaid.

99. As a result of these actions, Winning Connections has been damaged in the amount of $30,000, plus interest.

## XII. Spoliation (Defendant Chism)

100.    Plaintiff incorporates paragraph 1-99 of this Complaint, as if set forth in full herein.

101.    Defendant Chism was aware no later than September 20, 2005, and perhaps before, of the existence of a potential civil action related to his misuse of Winning Connections resources, his breach of fiduciary duty, and his intended misappropriation of confidential business information and trade secrets.

102.    Defendant Chism had a legal duty to preserve all documents on his company laptop computer. Defendant Chism enjoyed a special relationship with Winning Connections as its Vice President, and in that capacity, and in his capacity as someone working for Winning Connections, had a duty to preserve and maintain materials about Winning Connections or residing on company computers. This was particularly true in September, October and November 2005, during which period Defendant Chism explicitly recognized the likelihood of a potential civil action based upon his actions, including the instant litigation.

103.    Defendant Chism willfully, recklessly and negligently destroyed that evidence by deleting over 500 documents from his Winning Connections computer, and then, in a highly unusual action signifying his malicious intent, using a registry wiping software to erase any trace of the evidence from the computer. In so doing, Defendant Chism significantly impaired Winning

31

Connections ability to prove the potential civil action asserted above against not only Defendant Chism, but also Defendants Gosselink and Lee and John Doe # 1.

104.    A proximate relationship exists between the impairment of Winning Connection's claims arising out of the theft of its confidential business information, materials and trade secrets, and the unavailability of the destroyed evidence in that there is a significant possibility of Winning Connections' success on its claims were the evidence available. The absence of over 500 documents that were deleted and wiped by Defendant Chism will seriously prejudice Winning Connections' ability to prove its claims enumerated above against the other Defendants, and against Defendant Chism himself.

105.    Winning Connections has a significant possibility – indeed, virtual certainty – of succeeding on the merits of its claims if the deleted evidence were available. To the extent that Winning Connections will not be able to prove the entirety of its claims in the litigation, Winning Connections will have suffered direct damages as a result of Defendant Chism's destruction of evidence, given that it had a reasonable probability of success, including a substantial and realistic possibility of success, on the entirety of its claims and those claims were significantly impaired by Defendant's spoliation.

106.    It is possible that Defendants Gosselink and/or Lee may have also participated in such spoliation, and Winning Connections reserves the right to assert such claims against them as well.

## Prayer For Relief

WHEREFORE, Plaintiff Winning Connections, demands judgment against Defendants as follows:

1.      A permanent injunction forbidding Defendants or their company, Defendant Joe Doe 1, from utilizing any information obtained from, through or about Winning Connections, including but not limited to marketing to any clients or prospective clients of Winning Connections with which Defendants had any contact while working for Winning Connections, for a period of three years, and requiring Defendants to immediately disgorge to Plaintiff all such materials, in any form in which it is kept;

2.      A permanent injunction prohibiting Defendants, or any of them, for a period of one year through December 15, 2006, from competing with Winning Connections in the business of grassroots advocacy or telephone voter contact services for political campaigns, political parties, and political interest groups, or from performing such services for national presidential campaigns, Senate and Congressional campaigns, national and state political parties, so-called "527" groups, other interest groups, trade associations, lobbyists and public affairs consultants in identifying key messages, including but not limited to developing phone strategies and scripts, implementing telephone, Internet or voter contact campaigns,

3.      A permanent injunction forbidding Defendants, or any other person or entity associated or affiliated with him of Defendant John Doe 1, from slandering, libeling, or mentioning in any way anything about Winning Connections;

4.      A permanent injunction requiring Defendants to withdraw any marketing materials that they have created and disseminated to any third party that refers to Winning Connections, or the work of Defendants Chism of Gosselink or any other person working for them or John Doe 1 while they were at Winning Connections;

33

5.  A permanent injunction prohibiting Defendants or any other person working for or on behalf of Defendant John Doe 1 from contacting any person working with or for Winning Connections for a period of two years;

6.  A permanent injunction forbidding Defendants or any entities for whom they will work from using any and all Winning Connections' confidential and proprietary information;

7.  An injunction requiring all Defendants, and each of them, to disgorge any and all compensation, benefits, payments and/or profits they have obtained through the unlawful use of Winning Connections' proprietary and confidential information;

8.  A permanent injunction prohibiting Defendant Lee from using letters of recommendation written by Mr. Jameson;

9.  Reimbursement of $30,000 loan, plus interest at the prime rate, or any other appropriate legal action, such as a lien, to ensure repayment;

10. Compensatory damages and statutory damages in an amount to be proven at trial, but exceeding $500,000;

11. an adjusted increase of damages based upon the harm to Winning Connections' ability to prevail on the merits of its claims due to the significant impairment resulting from the absence of the spoliated evidence caused by Defendant Chism, and possibly the other Defendants;

12. Punitive damages in an amount to be proven at trial;

13. Attorney fees;

14. Lost profits;

15. Fees and Costs associated with bringing this action; and

16. Any other relief that the Court deems appropriate.

## Demand for a Jury Trial

Plaintiff Winning Connections demands a jury trial on all issues.


Dated:  January 18, 2006                    Respectfully submitted,

_____
David J. Farber (415899)
Susan E. Baldwin (477241)
Patton Boggs LLP
2550 M Street, N.W.
Washington, D.C.  20037
(Tel) 202-457-6000
(Fax) 202-457-6315
dfarber@pattonboggs.com
sbaldwin@pattonboggs.com

*Attorneys for Plaintiff*

## VERIFICATION

I have reviewed the foregoing complaint and attest that the facts stated therein are true and correct to the best of my knowledge.

John Jameson
President, Winning Connections, Inc.

Sworn to me on this 17th day of January, 2006.

Notary Public

DEBRA KEATS, NOTARY PUBLIC
DISTRICT OF COLUMBIA
EXPIRES MARCH 14, 2010

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Verified Second Amended Complaint, and all related attachments, was served via First Class Mail, postage prepaid, this 17th day of January, 2006 to the following.

Neil Barkus, Esq.
Scot Hinshaw, Esq.
Hunton & Williams
1900 K Street, N.W.
Washington, D.C. 20006-1109

Counsel for Defendants Chad Gosselink and Brad Chism

James Craig, Esq.
Phelps & Dunbar
111 East Capitol Street
Suite 600
Jackson, MS 39201-2122

Co-Counsel for Defendant Brad Chism

*Susan E Baldwin*